Irving Magana **GARCIA**, Appellant

v.

The **STATE** of Texas.

No. PD–0646–13.

Court of Criminal Appeals of Texas.

April 9, 2014.

Opinion Dissenting from the Denial of Rehearing June 11, 2014.

Joseph A. Connors III, McAllen, TX, for Appellant.

Theodare C. Hake, Assistant District Attorney, Edinburg, TX, Lisa C. McMinn, State's Attorney, Austin, TX, for State.

KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, KEASLER and HERVEY, JJ., joined.

The question in this case is whether the record must contain a waiver colloquy between the trial judge and the defendant before an appellate court may conclude that a defendant has waived his right to an interpreter. We hold that the record does not have to contain such a colloquy, as long as the record otherwise affirmatively reflects that a waiver occurred. Concluding that the record affirmatively reflects a waiver in the present case, we affirm the judgment of the court of appeals.

## I. BACKGROUND

### A. Trial

Appellant is a native Spanish speaker who does not understand English. The trial judge was aware of this fact at trial but did not appoint an interpreter.

At a motion-for-new-trial hearing, appellant's trial counsel testified that (1) he is fully bilingual and had conversations with appellant in Spanish, (2) he told appellant that he did not want an interpreter because it would be very distracting for the jury and it would make it harder for him to concentrate on what he was doing,[1] (3) he told appellant that he would provide a very brief summary of each witness's harmful testimony after the testimony or on break, which he did, and (4) when he told appellant that he did not want an interpreter, appellant replied (in Spanish), "Whatever you want." Trial counsel also testified that he did not explain to appellant that his right to have the proceedings interpreted in Spanish was based upon the Confrontation Clause in both the federal and state constitutions. When asked "whether or not the Defendant was aware he could have gotten an interpreter from the Judge so that the client could understand the Spanish language," trial counsel responded, "I don't believe so, sir." Trial counsel was further asked, "Was there ever a hearing where you and the client, in front of the Judge, waived his right to have an interpreter?" Trial counsel replied, "I don't believe so." When asked whether he ever told the judge that he did not want an interpreter, trial counsel replied, "I don't believe I did."

Appellant also testified at the motion-for-new-trial hearing. He explained that counsel told him that he had a right to an interpreter but that counsel said he would not recommend that because having one would distract him and not let him concen-

---

1. Trial counsel specifically testified that he was concerned that appellant would try to ask the interpreter questions while counsel was trying to concentrate on answers or the next question. In response to the question, "And that decreases your ability to be a good lawyer with all this conversation going on right beside you," trial counsel replied, "I believe so. It's also very distracting to the jury."

trate very well. Appellant also testified that he agreed to not request an interpreter because [if he had an interpreter] his attorney was not going to be able to concentrate in defending him.

The prosecutor testified that she asked defense counsel before trial, "Aren't you going to have an interpreter for your client?" According to the prosecutor, defense counsel told her that he did not want one and that he did not really want his client to know what was going on. The prosecutor also stated that the judge was informed by defense counsel that the defendant was not going to need an interpreter.[2]

The trial judge stated, "I find that [appellant] waived the right to an interpreter. He waived it verbally. He never objected to an interpreter not being present, and, I mean, that's what I recall of the case. He knew about the interpreter and he didn't want an interpreter and, therefore, we didn't give him an interpreter." When asked if that waiver was on the record or off the record, the trial judge responded, "The Court finds that the Court talked to [appellant] and [trial counsel]. I want to say it was up here on the bench where we were talking and he said he didn't want one, so it's a waiver."[3]

**2.** The prosecutor said that she informed the judge that some of her witnesses would need an interpreter and would be testifying in Spanish.

**3.** The trial judge also stated that trial counsel did "a very good job under the facts of this case" and was "extraordinary" and referred to the fact that counsel "got a murder case where the only way that the lesser-included got into it was because of the confession." Appellant was charged with and convicted of murder, but the jury found in his favor on the issue of sudden passion, *see* TEX. PENAL CODE § 19.02(a), (d), and assessed a sentence of twenty years and a $10,000 fine. Appellant's motion for new trial included allegations of ineffective assistance of counsel. The ineffec-

## B. Appeal

On appeal, appellant contended, *inter alia res*, that the trial judge erred in failing to *sua sponte* appoint an interpreter. The court of appeals concluded that there was evidence that trial counsel informed the trial court and the prosecutor that appellant did not want an interpreter.[4] The court also concluded that, although the evidence was conflicting, the trial judge could have determined that appellant voluntarily and knowingly waived the appointment of an interpreter because appellant knew that he had the right to an interpreter, understood counsel's reasons for waiving that right, and agreed with him.[5] Finally, the court of appeals concluded that the trial judge recollected that appellant waived his right to an interpreter during an unrecorded bench conference.[6] Reviewing the evidence in the light most favorable to the trial judge's ruling, the court of appeals held that the record established that appellant "effectively made an express waiver of his right to a translator."[7]

## II. ANALYSIS

In *Marin v. State*, we held that our system contains three distinct categories of rules: (1) absolute requirements and

tive-assistance allegations included counsel's failure to secure an interpreter but also extended to other matters. On appeal, appellant raised an ineffective-assistance claim regarding the failure to secure an interpreter, but the court of appeals's resolution of that claim is not before us.

**4.** *Garcia v. State*, No. 13–11–00547–CR, 2013 WL 865411, *4–5, 2013 Tex.App. LEXIS 2328, *12 (March 7, 2013) (not designated for publication).

**5.** *Id.*

**6.** *Id.*

**7.** *Id.* at *5, 2013 Tex.App. LEXIS 2328 at *13.

prohibitions, (2) rights that must be implemented unless expressly waived, and (3) rights that are to be implemented upon request.[8] No one disputes that the right at issue here falls under the second category; that is, when the trial judge knows that the defendant cannot understand English, an interpreter must be appointed for the defendant unless the defendant waives such appointment.[9] The question at issue here is what constitutes a "waiver" under *Marin*. We explained in that case that, unlike the third category of rules, in which rights are forfeited through inaction alone, "waivable rights ... do not vanish so easily."[10] More specifically, we said, "Although a litigant might give them up and, indeed, has a right to do so, he is never deemed to have done so in fact unless he says so plainly, freely, intelligently, sometimes in writing and *always on the record*."[11] We must explore in the present case what we meant in *Marin* when we said that the waiver of a waivable-only right must be "on the record."

For this statement, the *Marin* decision cited *Goffney v. State.*[12] In *Goffney*, the defendant waived the right to counsel at trial and represented himself.[13] We held that "the record must be sufficient for the reviewing court to make an assessment that the defendant was made aware of the dangers and disadvantages of the self-representation."[14] In connection with that holding, we quoted an oft-quoted passage from *Carnley v. Cochran*[15]:

> Presuming waiver from a silent record is impermissible. The record must show, *or there must be an allegation and evidence which must show,* that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.[16]

The Supreme Court has quoted this exact passage in several of its landmark decisions, including *Miranda v. Arizona*,[17] *Boykin v. Alabama*,[18] and *Barker v. Wingo*.[19] In *Barker*, the Court observed that it had previously defined waiver, in *Johnson v. Zerbst*,[20] as "an intentional relinquishment or abandonment of a known right or privilege."[21] A few sentences later, the Court quoted the passage from *Carnley* regarding the need to show waiver on the record and then stated, "The Court has ruled similarly with respect to waiver of other rights designed to protect the accused. See, *e.g. Miranda v. Arizona* [and] *Boykin v. Alabama.*"[22]

---

**8.** 851 S.W.2d 275, 279 (Tex.Crim.App.1993).

**9.** *See Linton v. State,* 275 S.W.3d 493, 502 (Tex.Crim.App.2009) (quoting *Garcia v. State,* 149 S.W.3d 135, 145 (Tex.Crim.App.2004)).

**10.** *Marin,* 851 S.W.2d at 280.

**11.** *Id.* (emphasis added).

**12.** *Id.* (citing *Goffney v. State,* 843 S.W.2d 583 (Tex.Crim.App.1992)).

**13.** *Goffney,* 843 S.W.2d at 584–85.

**14.** *Id.* at 585.

**15.** 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

**16.** *Goffney,* 843 S.W.2d at 585 (quoting *Carnley,* 369 U.S. at 516, 82 S.Ct. 884) (emphasis added).

**17.** 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**18.** 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

**19.** 407 U.S. 514, 526, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**20.** 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

**21.** *Barker,* 407 U.S. at 525, 92 S.Ct. 2182 (quoting *Johnson,* 304 U.S. at 464, 58 S.Ct. 1019).

**22.** *Id.* at 526, 58 S.Ct. 1019 (citations omitted).

■ Our citation to *Goffney* in *Marin* indicates that we were not creating a state-law concept of waiver but were referring to the concept of waiver described by the United States Supreme Court in its constitutional jurisprudence. That waiver jurisprudence includes the *Johnson* definition of waiver and the *Carnley* explanation of how waiver must be shown for the purpose of appellate review. With respect to the present case, the key part of the *Carnley* passage is the phrase "or there must be an allegation and evidence which must show." The Supreme Court was not content to simply say that the "record" must show a waiver. It added an alternative way of showing the waiver through "an allegation and evidence." The "allegation and evidence" phrase indicates that an appellate court can determine that a valid waiver has occurred even if the record fails to contain a waiver colloquy—so long as there is other evidence that a valid waiver actually occurred.

This conclusion is supported by subsequent caselaw from the Supreme Court and from us. *Miranda v. Arizona* requires a waiver of the right to remain silent and the right to counsel prior to custodial interrogation for statements to be admissible in the State's case-in-chief at trial.[23] In *North Carolina v. Butler*,[24] the Supreme Court addressed whether the waiver of those rights had to be explicit. The Supreme Court concluded that it did not: "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver."[25] Although mere silence is not enough to establish a waiver of *Miranda* rights, "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."[26] The Court further commented that "[w]e do not today even remotely question the holding in *Carnley v. Cochran*, which was specifically approved in the *Miranda* opinion."[27] The Court quoted the *Carnley* passage that we have quoted above and said, "This statement is consistent with our decision today, which is merely that a court *may* find an intelligent and understanding rejection of counsel in situations where the defendant did not *expressly* state as much."[28]

*Boykin v. Alabama* requires that the record reflect a waiver of certain rights necessary to make a plea of guilty voluntary.[29] In *Davison v. State*,[30] we were called upon to determine whether the record was sufficient to demonstrate compliance with *Boykin*. The defendant entered an open plea of guilty to the offense of burglary of a building, ordinarily a state-jail felony, but he pled true to felony enhancement paragraphs that made him susceptible to punishment as a second-degree felon.[31] The record contained an explicit admonishment from the trial court on the range of punishment for a state-jail felony (180 days to two years) before the defendant pled guilty, but "[a]t no point in any of these proceedings did the trial court ever formally admonish the [defendant] that, as enhanced, the charges . . . exposed him to a range of punishment, as a second

---

23.  384 U.S. at 444–45, 470–71, 475, 86 S.Ct. 1602.

24.  441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).

25.  *Id.* at 373, 99 S.Ct. 1755.

26.  *Id.*

27.  *Id.* at 373 n. 4, 99 S.Ct. 1755 (citation omitted).

28.  *Id.*

29.  395 U.S. at 242–44, 89 S.Ct. 1709.

30.  405 S.W.3d 682 (Tex.Crim.App.2013).

31.  *Id.* at 684–85.

degree felon, of two to twenty years." [32] At the punishment phase, however, a probation officer testified that the defendant was subject to punishment for a second-degree felony, and, before closing arguments at punishment, the trial judge remarked that the enhancement provisions made the offense "punishable by two to twenty." [33]

We assumed, without deciding, that a silent record concerning the range of punishment would violate the *Boykin* requirement that the prerequisites of a voluntary guilty plea be spread on the record. [34] But we held that the record was not totally silent because the trial judge explicitly referred to the second-degree-felony punishment range at the punishment phase of trial and the defendant did not exhibit any alarm at that time. [35] We concluded that it was legitimate to infer from the defendant's nonchalance that he was aware of

that punishment range at the time he entered his plea. [36] We did not foreclose the possibility that the defendant could show in a post-conviction habeas corpus proceeding that he was in fact unaware of the applicable range of punishment at the time of his plea. [37]

In line with the holdings in *Butler* and *Davison,* we conclude that the record in the present case sufficiently reflects that appellant knowingly, intelligently, and voluntarily waived his right to an interpreter. The record here contains evidence that trial counsel told appellant that he had a right to an interpreter, that appellant agreed with counsel not to request an interpreter, and that appellant and counsel communicated their desire not to have an interpreter to the trial judge, albeit in an off-the-record bench conference. Under these facts the record on appeal sufficiently reflects that a valid waiver took place. [38]

32. *Id.* at 685.

33. *Id.*

34. *Id.* at 692 ("even assuming that a silent record with respect to the appellant's awareness of the range of punishment is alone sufficient to trigger *Boykin* 's appellate presumptions"). *See also Boykin,* 395 U.S. at 238, 89 S.Ct. 1709 ("requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation").

35. *Davison,* 405 S.W.3d at 688–89, 692.

36. *Id.*

37. *Id.* at 692 n. 60.

38. Citing three Supreme Court cases and several lower court cases, the dissent contends that the record shows appellant's waiver to be involuntary, because he was forced to choose between forgoing an interpreter and giving up his right to the effective assistance of counsel. We note that two of the Supreme Court decisions cited by the dissent are of questionable value, either because the cited opinion was a mere plurality or because the holding appears to have been overruled. *See Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (plurality op.); *Keeney v. Tamayo-*

*Reyes,* 504 U.S. 1, 5–6, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (abrogating intentional-bypass rule articulated in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)). The remaining Supreme Court case involved remarkably different facts, with the defendant waiving his right to counsel out of fear that he might otherwise be lynched. *Moore v. Michigan,* 355 U.S. 155, 164–65, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957). To the extent the lower court cases cited by the dissent address situations in which the defendant was required to sacrifice one constitutional right to secure another, they are distinguishable from the present case, in which the client merely faced the possibility that his attorney's performance would be diminished if the client insisted on an interpreter. We disagree with the dissent's suggestion that the record supports only the view that the client was led to believe that the use of an interpreter would completely deprive counsel of the ability to concentrate. From this record, the trial judge could have concluded that counsel conveyed to appellant merely that use of an interpreter would make counsel's job more difficult. That is not the same as rendering counsel constitutionally ineffective, and counsel's ability to *better* represent his client, due to the presence of fewer distractions, is a matter of

We affirm the judgment of the court of appeals.

ALCALA, J., filed a dissenting opinion in which JOHNSON and COCHRAN, JJ., joined.

ALCALA, J., filed a dissenting opinion in which JOHNSON and COCHRAN, JJ., joined.

The trial-court judge's single question asking whether Irving Magana Garcia, appellant, wanted a language interpreter was wholly inadequate to establish that he voluntarily waived his federal constitutional right to an interpreter whose assistance would have enabled him to understand the proceedings and confront the witnesses against him. *See* U.S. CONST. amends. VI, XIV. Although I concur with the majority opinion that, in an appropriate case, a record may be sufficient to show a knowing and voluntary waiver despite the absence of a transcript of the actual statements at the time they transpired, I disagree that the record in this case adequately establishes that appellant's waiver of his right to an interpreter was voluntary. Accordingly, I would reverse the judgment of the court of appeals upholding appellant's conviction for second-degree murder and remand to the court of appeals for a harm analysis. *See Garcia v. State,* No. 13–11–00547–CR, 2013 Tex.App. LEXIS 2328, 2013 WL 865411, at *2 (Tex.App.-Corpus Christi Mar. 7, 2013) (mem. op., not designated for publication). I, therefore, respectfully dissent.

## I.  Background

In 2011, a jury convicted appellant of murder, and he was sentenced to twenty years in prison and a fine of $10,000 after the jury determined, in the punishment phase, that he killed the complainant under the immediate influence of sudden passion arising from an adequate cause. *See* TEX. PENAL CODE § 19.02(a), (b), (d). At trial, appellant, who speaks and understands only Spanish, was represented by an attorney who was fluent in Spanish and English. No interpreter translated the proceedings into Spanish for appellant. Appellant, however, was able to understand testimony by seven of the twenty witnesses who testified in Spanish with an interpreter translating their testimony into English for the jury. Appellant also testified in his own defense, with his testimony being translated from Spanish into English by an interpreter. For the twelve witnesses who testified in English, counsel gave appellant "a very brief summary of what the witnesses said that was harmful to us."

After sentencing, appellant filed a motion for new trial asserting that he did not knowingly and voluntarily waive his right to an interpreter. *See* TEX.CODE CRIM. PROC. art. 38.30. The trial court initially denied appellant's motion for new trial without a hearing. This became one of appellant's complaints in his brief on direct appeal, prompting an abatement by the court of appeals to allow appellant to introduce evidence at a new-trial hearing. *See Garcia,* 2013 WL 865411, at *2. On abatement, the trial court held an evidentiary hearing during which it heard testimony from appellant, appellant's trial counsel, and the State's attorney who prosecuted appellant at his jury trial. At the end of the hearing, the trial court denied the motion and made oral and written findings of fact and conclusions of law.[1]

---

legitimate strategy. Moreover, counsel's testimony that appellant responded, "Whatever you want," supports a conclusion that appellant was willing to defer to trial counsel's wishes regardless of trial counsel's reasons for not wanting an interpreter.

1.  After it denied appellant's motion for new trial, the trial court made six written findings of fact, four of which are discussed within the portion of this opinion to which they are pertinent. *See* TEX.R.APP. P. 21.8(b) (permitting court ruling on motion for new trial to

As presented at the hearing on the motion for new trial, almost all of the facts pertinent to determining whether appellant knowingly and voluntarily waived his right to an interpreter are conclusively shown by the record. The record affirmatively shows that the trial judge and the attorneys all knew before trial that appellant could speak and understand only Spanish.[2] In an off-the-record discussion at the bench that occurred prior to the beginning of testimony, the judge asked counsel if appellant wanted an interpreter for the trial, and counsel said that appellant did not want one.[3] The bench discussion was not transcribed at that time. Later, at the motion-for-new-trial hearing, descriptions of this off-the-record discussion were conveyed by the testimony of those who were present at the bench when it occurred: the State's attorney, appellant's trial counsel, appellant, and the trial judge. The record before us shows that the trial judge did not make any inquiries beyond merely asking appellant's counsel if appellant wanted an interpreter. This single question and answer constituted the entirety of any discussions between the court and appellant with respect to whether appellant wanted an interpreter. At no time did the trial judge question appellant or his attorney about their reasons for declining an interpreter or about whether appellant's waiver of an interpreter was being made knowingly and voluntarily, and the trial court did not make any factual findings addressing whether appellant's waiver was made knowingly and voluntarily, although the court did determine that the waiver was made due to trial strategy.

## II. Analysis

Although I agree with the majority opinion that a record of the parties' actual statements at the time they are made is not a procedural prerequisite to a finding that a waiver is shown in the record,[4] I

---

make oral or written findings of fact). The two remaining findings are immaterial to resolution of this appeal. The first finding merely describes this claim as the "central claim in this motion for new trial," and the sixth finding addresses the other claims in the motion for new trial, stating that they have "no merit."

2. For example, at the start of appellant's arraignment, the record indicates that the trial judge asked appellant, "Do you understand English?" to which appellant answered, "No."

3. The trial judge stated orally after the new-trial hearing that he recalled having talked to appellant and appellant's trial counsel "up here on the bench where we were talking and he said he didn't want one, so it's a waiver." The State's attorney also recalled a discussion with the trial judge at the bench, during which appellant's trial attorney told the judge that they did not want an interpreter. The State's attorney testified, "I think that it was an informal question by the Judge, are you going to want an interpreter? ... I know that the Judge was informed that he wasn't going to need an interpreter." The State's attorney did not believe that the trial court

had ever talked "at all" to appellant himself about whether he wanted an interpreter. Based on this evidence and the trial judge's own recollection, the judge's third and fourth findings state,

> 3. Based upon the credible testimony of [the State's attorney] ... and this Court's recollection of the underlying proceedings, [appellant] waived his right to an interpreter during an unrecorded bench conference.
> 4. That it was based on this waiver that this Court determined that the appointment of an interpreter was not needed.

4. In discussing how a *Marin* category-two right is waived, this Court has stated that this occurs "always on the record." *Marin v. State*, 851 S.W.2d 275, 280 (Tex.Crim.App. 1993). As support for its holding, *Marin* cited to *Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim.App.1992). *Goffney* explained that "[p]resuming waiver from a silent record is impermissible," and that the "record must show, or there must be an allegation and evidence which must show," that the offer of an implementation of a right was "intelligently and understandingly rejected." *Goffney*, 843 S.W.2d at 585 (citing *Carnley v. Cochran*,

disagree that this record shows that appellant executed a voluntary waiver of his federal constitutional right to have an interpreter. By asking merely a single question whether appellant wanted an interpreter, the trial judge failed to satisfy his burden to ascertain whether appellant's waiver was voluntary or whether it was rather the product of coercion. Furthermore, the record in this case conclusively shows that appellant was coerced by his attorney into declining an interpreter. Appellant assented to his attorney's suggestion that he decline an interpreter because counsel presented him with the untenable choice of moving forward either with (1) an interpreter and counsel being unable to concentrate, or (2) no interpreter and counsel being able to concentrate. This choice between implementation of one constitutional right, the right to confront witnesses, versus abridgement of another constitutional right, the right to effective assistance of trial counsel, renders the resulting choice involuntary.

## A. Any Waiver of An Interpreter Must Be Knowing and Voluntary

"When a trial judge is aware that the defendant has a problem understanding the English language, the defendant's right to have an interpreter translate the trial proceedings into a language which the defendant understands is a category-two *Marin* right." *Garcia v. State*, 149 S.W.3d 135, 145 (Tex.Crim.App.2004). *Marin* teaches that "our system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigant which are to be implemented upon request." *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim.App.1993). For category-two *Marin* rights, a defendant "need make no request at trial for the implementation of such rights, as the judge has an independent duty to implement them" absent a knowing or voluntary waiver of that right. *Id.* at 280. Absent a knowing or voluntary waiver of the right to an interpreter, the trial court violates a defendant's federal constitutional right to confront the witnesses against him when the judge is aware that the defendant does not speak and understand English and fails to appoint an interpreter for him. *See Garcia*, 149 S.W.3d at 144 ("[I]f the judge is aware of the defendant's language barrier, the judge has an independent duty to ensure that the proceedings are interpreted for the defendant, absent the defendant's knowing and intelligent waiver."). A defendant may choose to give up category-two waivable rights,

369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)). By referring to a category-two waiver as "always" occurring on the record, this Court suggested that there must be more than a silent record and that the record must affirmatively show that a waiver of a right was knowing and voluntary, but it did not signal that there must be a transcription of the actual statements documenting a waiver at the time they take place. This characterization of *Marin* is consistent with this Court's recent decision in *Davison v. State*, 405 S.W.3d 682, 685–87 (Tex.Crim.App.2013), in which we held that the record may be sufficient to establish waiver if it "otherwise affirmatively discloses" that a waiver was knowing and voluntary. I note, however, that as the Supreme Court pointed out approximately seventy-five years ago, "whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In light of the Supreme Court's position in *Johnson*, a trial court should ordinarily place on the record any waiver of a constitutional right by a defendant at the time the waiver takes place. *See id.* But in those rare cases in which such an on-the-record waiver is absent, other evidence in the record may suffice to show that a defendant knowingly and voluntarily waived his right to an interpreter. *See id.*

but "he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently." *Marin*, 851 S.W.2d at 280.

## B. Record Fails to Establish that Appellant's Waiver Was Voluntary

Assuming that the record supports a determination that appellant acted knowingly in that he was aware that he was giving up his right to have an interpreter, I would hold that it is inadequate to establish that he executed his waiver voluntarily.[5] I conclude that appellant's choice was involuntary because (1) it was the result of him being given two constitutionally offensive options; (2) the evidence of strategy was immaterial to whether the choice was involuntary; and, (3) excluding appellant's and counsel's testimony, the silent record was inadequate to establish that the choice was voluntary. I also note that (4) this Court should look to the best practices that have been implemented by federal courts for guidance as to how a defendant may effectively waive his right to an interpreter.

### 1. Choice Is Involuntary When Result Of Constitutionally Offensive Options

This Court recently reaffirmed that federal "due process requires that '[w]aivers of constitutional rights not only must be done voluntarily but must be knowing, in-telligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' " *Davison v. State*, 405 S.W.3d 682, 686 (Tex.Crim.App.2013) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). As appellant points out, in the context of a waiver of *Miranda* rights, the Supreme Court has explained that "the relinquishment of the [constitutional] right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "Only if the totality of the circumstances surrounding [the waiver] reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude" that a waiver has occurred. *Id.* (citations omitted).

Here, the trial court did not make any factual finding with respect to whether appellant's waiver was voluntary or whether it believed appellant and his counsel's testimony with respect to their reasons for declining an interpreter. The only evidence in the record with respect to appellant's and trial counsel's rationale for declining an interpreter was that counsel told appellant that having an interpreter would result in counsel being unable "to concentrate in defending" him because the interpreter was too distracting to counsel and the jury.[6] Not surprisingly, faced with the

---

5. The trial court did not make any express finding that appellant acted knowingly in waiving his right to an interpreter. Although the record does show that appellant was aware of his right to an interpreter, I do not reach the question of whether his waiver was executed knowingly in the sense that it was made with sufficient awareness of both the relevant circumstances and likely consequences of waiving that right. *See Joseph v. State*, 309 S.W.3d 20, 27 (Tex.Crim.App.2010) (stating, in context of waiver of *Miranda* rights, that relinquishment of rights must be made with sufficient "awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them").

6. Appellant testified at the hearing on the motion for new trial that trial counsel did not "recommend" an interpreter because "that would distract him and not let him concentrate very well." The record shows the following:

> [State's attorney] Did you agree—again, you agree[d] not to request an interpreter and you did not want one present?
>
> [Appellant]: Yes, because he told me that he was not going to be able to concentrate in defending me.

Trial counsel similarly testified that having an interpreter would be too distracting for counsel. The record shows the following:

coercive choice of either having (1) an interpreter, which would cause his attorney to be unable to concentrate, or (2) no interpreter, which would allow his attorney to concentrate, appellant agreed with his attorney's suggestion that he proceed without an interpreter. The Supreme Court has disapproved of this type of waiver that is made from the presentation of a coercive choice. *See Fay v. Noia,* 372 U.S. 391, 399, 439–40, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) (habeas applicant's failure to appeal from conviction was not an intelligent and voluntary waiver given choice between life sentence or appeal with chance of death penalty on retrial), *overruled in part by Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *see also Moore v. Michigan,* 355 U.S. 155, 160–65, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); *Von Moltke v. Gillies,* 332 U.S. 708, 726, 68 S.Ct. 316, 92 L.Ed. 309 (1948). Federal and state courts similarly disapprove of waivers resulting from coercive choices that require a defendant to choose to give up one constitutional right in order to ensure that another is protected. *See, e.g., Smith v. Grams,* 565 F.3d 1037, 1045–46 (7th Cir.2009) (waiver of right to counsel held not voluntary and knowing where defendant terminated counsel and requested another attorney, but the trial court would allow delay and appointment only upon waiver of speedy trial right); *Pazden v. Maurer,* 424 F.3d 303, 319 (3d Cir.2005) (holding waiver of counsel involuntary and stating that "choice between incompetent or unprepared counsel and appearing pro se is a dilemma of constitutional magnitude," and resulting choice to proceed pro se "cannot be voluntary in the constitutional sense when such a dilemma exists") (citations omitted); *United States v. Silkwood,* 893 F.2d 245, 248–49 (10th Cir.1989) (waiver of right to counsel at sentencing not voluntary where trial court tried to dissuade discharge of counsel defendant believed incompetent; "for the waiver to be voluntary, the trial court must inquire into the reasons for the defendant's dissatisfaction with his counsel to ensure that the defendant is not exercising a choice between incompetent or unprepared counsel and appearing pro se"); *Beverly v. State,* 349 Md. 106, 707 A.2d 91, 97–98 (1998) (defendant whose plea of guilty was improperly denied by trial court held not to waive issue on appeal after conviction because he was faced with coercive choice). In sum, a "clear choice between two alternative courses of action does not always permit a [defendant] to make a voluntary decision. If a choice presented ... is constitutionally offensive, then the choice cannot be voluntary." *Wilks v. Israel,* 627 F.2d 32, 35 (7th Cir.1980) (citations omitted). Because appellant was presented with the constitutionally offensive choice between effective counsel and an interpreter, his waiver was coerced. *See Crandell v. Bunnell,* 25 F.3d 754, 755 (9th Cir.1994) (stating that "[a] criminal defendant may be asked to choose between waiver and another course of action so long as the choice presented to him is not constitutionally offensive") (citations omitted).

---

[Appellate counsel]: So in your affidavit, ... [you state that t]he "accused and I agreed not to ask for an interpreter." What else goes in—in your and his decision-making to support that sentence?

[Trial counsel]: Well, I just told him I didn't want an interpreter and he says whatever you want.

Trial counsel further explained to appellant that he thought that an interpreter "would be very distracting for the jury" because the jury might be looking at appellant and the interpreter "as opposed to concentrating on the evidence in this case." Trial counsel also thought that an interpreter would be distracting to counsel because appellant might be "asking the interpreter questions while [trial counsel was] trying to listen to answers, or thinking about the following question."

## 2. Evidence of Strategy Is Immaterial to Whether the Choice Was Voluntary

It is true that the trial court made what it labeled as a finding of fact stating that there were "valid reasons, pertaining to trial strategy" to explain why appellant did not request an interpreter.[7] The trial court did not explain what evidence the court relied on to make that assessment, what the strategy may have been, or how that determination could resolve the question of whether appellant's decision was voluntary and not based on coercive information. I conclude that the trial court's determination that the decision to waive an interpreter was based on strategy is immaterial to the resolution of this appeal. Whether an attorney's action is a valid trial strategy is a legal determination pertinent to whether a defendant has established ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see Ex parte Ellis*, 233 S.W.3d 324, 336 (Tex.Crim.App.2007). Because the issue presently before this court concerns the voluntariness of appellant's decision to waive his right to an interpreter, the trial court's ruling pertaining to the separate question of whether appellant's attorney's actions could be classified as strategy for purposes of a claim on ineffective assistance of counsel is immaterial.

Although it is not dispositive of the question before us in this appeal, I note here that at least one court has deemed trial counsel's purported strategy in declining the services of an interpreter to be unreasonable. *See Ling v. State*, 288 Ga.

299, 702 S.E.2d 881, 883 n. 1 (2010). In *Ling*, the Georgia Supreme Court rejected trial counsel's claimed strategy in failing to secure an interpreter for a non-English-speaking defendant "on the basis that he was concerned using an interpreter might cause the jury to grow impatient and did not want to draw too much attention to the fact that [the defendant] was not a native English speaker." *Id.* That Court stated that counsel's claimed strategy was "not professionally reasonable" when it was based on "speculative fears" of juror bias and when the record indicated that the defendant did not participate in the decision to waive an interpreter. *Id.* Here, although he participated in the decision to waive an interpreter, appellant was given only the constitutionally impermissible choice between having either an interpreter or an effective attorney, and the presentation of only these two choices can hardly be characterized as an objectively reasonable trial strategy. *See Ex parte Harrington*, 310 S.W.3d 452, 459 (Tex.Crim.App. 2010) (counsel's strategy subject to review under objective standard of reasonableness). In any event, any determination about strategy is immaterial to the resolution of this appeal.

I conclude that the trial court's determination that the decision to waive an interpreter was based on valid trial strategy does not answer the separate question of whether appellant's waiver was voluntary, which is the pertinent question for purposes of determining whether that waiver was valid. *Marin*, 851 S.W.2d at 280. Even if the decision could be considered

---

7. The trial court made two fact findings, numbers two and five, determining that appellant was "aware of his right to an interpreter and for valid reasons, pertaining to trial strategy, did not request an interpreter," and that counsel discussed with appellant his "right to an interpreter and had a valid strategy in recommending that they not seek the appoint-

ment of an interpreter." Although he did not expressly state whether he believed appellant's and counsel's testimony describing their reasons for declining an interpreter, the judge implicitly credited that testimony by deciding that it formed the basis of a valid trial strategy.

strategic in the sense that appellant believed that it was in his best interest to agree with counsel's recommendation not to have an interpreter so that counsel would not be distracted, the decision was nevertheless involuntary because it was presented in the form of a coercive choice that unconstitutionally required appellant to give up one constitutional right in order to ensure that another would be protected.

### 3. Silent Record Inadequate to Establish That Choice Was Voluntary

Even if I were to assume that the trial court disbelieved appellant's and counsel's testimony describing this choice, all that would remain is a silent record with respect to whether appellant's waiver was voluntary and what appellant's reasons may have been for declining an interpreter. Without facts in the record to show that the waiver was voluntary, this Court should not presume that it was. *See Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) ("Presuming waiver from a silent record is impermissible."); *compare Briones v. State,* 595 S.W.2d 546, 547–48 (Tex.Crim.App.1980) (determining that Briones intelligently and voluntarily waived his right to confrontation where his attorney also acted as his interpreter based on record that showed trial judge asked Briones many questions to ascertain whether his waiver was effective). If appellant's and counsel's testimony describing their reasons for declining an interpreter is discounted, then this silent record fails to demonstrate that appellant was admonished by either counsel or the trial court of his right to have an interpreter and that he gave up this right voluntarily. *See Garcia,* 149 S.W.3d at 145. Absent that testimony, this silent record cannot support a determination that appellant's waiver was voluntary. *See Marin,* 851 S.W.2d at 280.

### 4. Federal Courts Provide Guidance on Best Practices

Although I might ordinarily look to factually similar federal case law for guidance as to what would constitute a voluntary waiver of the right to an interpreter, that matter is infrequently litigated in the federal courts because, pursuant to federal statute, a defendant may not waive his right to an interpreter unless certain procedural safeguards are met. *See* 28 U.S.C. § 1827(f)(1). Section 1827 specifies that a criminal defendant "who is entitled to interpretation ... may waive such interpretation in whole or in part," but further stipulates that such a waiver

shall be effective only if approved by the presiding judicial officer and made expressly by such individual on the record after opportunity to consult with counsel and after the presiding judicial officer has explained to such individual, utilizing the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise competent interpreter, the nature and effect of the waiver.

*Id.*

As the United States Court of Appeals for the Fifth Circuit has observed in interpreting the federal statutory requirements in this area, the "waiver of an interpreter is not a decision for [a defendant's] counsel or the Court to make. It is the defendant's decision, after the Court explains to him the nature and effect of a waiver." *United States v. Tapia,* 631 F.2d 1207, 1209 (5th Cir.1980). That court has also observed that in "many cases, counsel does not desire to have an interpreter sitting next to his client and may ask that one not be provided," in which case the trial judge should verify the validity of the waiver "before any waiver can be effective." *Id.*

To ensure that a defendant's federal right to confront the witnesses against him is protected, federal law has established

strict requirements for waiving an interpreter, and such an approach would certainly appear to be the best practice for a state trial court. But adoption of that level of strict scrutiny is unnecessary to grant appellant relief in this case, where the trial court did not conduct any inquiry at all to determine whether appellant's waiver was voluntary.

### III. Conclusion

Although I agree with the State that a record may be adequate in rare cases to show a knowing and voluntary waiver of the right to an interpreter in the absence of a transcription of the actual statements by a defendant waiving that right, this record fails to establish that appellant's waiver was voluntary. The record conclusively shows that counsel did not want an interpreter for his own reasons and urged appellant to forego his right to an interpreter without fully explaining the nature of the right at stake and the possible consequences of waiving that right. The trial court then compounded the problem by failing to verify that appellant's waiver was being made freely and voluntarily, with an adequate awareness of his rights and the effect of the waiver. In light of these facts, I would hold that appellant's waiver was ineffective and that his federal constitutional right to confront the witnesses against him was violated. *See Davison,* 405 S.W.3d at 686; *see also Baltierra v. State,* 586 S.W.2d 553, 556–57 (Tex.Crim. App.1979) (discussing right to interpreter under Confrontation Clause); *United States v. Lim,* 794 F.2d 469, 470 (9th Cir. 1986) (noting that "a defendant whose fluency in English is so impaired that it interferes with his right to confrontation or his capacity, as a witness, to understand or respond to questions has a constitutional right to an interpreter"). On this basis, this Court should hold that appellant's con-

stitutional rights were violated and remand to the court of appeals for a harm analysis using a constitutional-error standard of review. *See* Tex.R.App. P. 44.2(a).

### OPINION DISSENTING FROM THE DENIAL OF REHEARING

ALCALA, J., filed an opinion dissenting from the denial of rehearing, in which JOHNSON and COCHRAN, JJ., joined.

It seems that, despite the great strides that Texas's criminal-justice system has made in ensuring that all people will have fair trials, for every two steps forward there is one step back. The Court's holding in this case represents that step back and affects not only the Hispanic population in Texas, but all Texans who expect that their State's courts will consistently abide by the requirements of the United States Constitution. *See* U.S. Const. amends. VI, XIV. Non–English speakers and those with only a poor grasp of English comprise approximately nine percent of the population in Texas, or roughly two million people. *See* Camille Ryan, *Language Use in the United States: 2011 American Community Survey Reports,* U.S. Census Bureau, Aug. 2013, at 3, 11, available at http://www.census.gov/prod/2013pubs/acs-22.pdf (noting that roughly nine percent of those Texans surveyed in 2010 who spoke a non-English language at home rated their English-speaking ability as "not at all," the highest of any state). Assuming that the same proportion of non-English speakers will appear as criminal defendants in Texas state courts, that means that this Court's majority opinion will likely affect tens of thousands of defendants who, like Irving Magana Garcia, appellant, are unable to speak or understand the English language and are entirely dependent on courts to provide language translators for them.[1]

---

1. According to the Office of Court Administra-

tion, in fiscal year 2013, Texas criminal dis-

Despite the far-reaching effects of its decision, this Court's majority opinion used a smoke-and-mirrors approach to deny appellant relief by addressing only a subpart of his argument and not the thrust of his actual complaint. Specifically, rather than address the heart of appellant's complaint that his waiver was not valid, this Court instead exhaustively explained that a waiver may be shown through an off-the-record colloquy, but that matter had already been recently decided by this Court and, therefore, the discussion was largely immaterial to the resolution of this appeal. *See Davison v. State*, 405 S.W.3d 682, 685–87 (Tex.Crim.App.2013) (record may be sufficient to establish waiver if it "otherwise affirmatively discloses" that waiver was knowing and voluntary). The extensive discussion of this issue resulted in disguising the following logical fallacy: An actual waiver colloquy need not be on the record; here, the waiver was not on the record but there was a representation to the trial court by counsel that appellant did not want an interpreter; therefore, the waiver was valid. The fallacy in this reasoning is that it erroneously presumes that counsel's statement to the trial court indicating that appellant did not want an interpreter constituted a valid waiver of appellant's constitutional rights, the issue of which was the disputed matter before the Court and which this Court never addressed. This Court should grant rehearing because it has never addressed the ground presented in appellant's petition, a ground that is exceptionally important to preserve the rights of thousands of non-English-speaking defendants in Texas. Because this Court refuses to grant rehearing, I must respectfully dissent.

### I. The Majority Opinion Never Addressed Appellant's Ground in His Petition

This Court's majority opinion began by setting up high hopes that appellant's complaint would be addressed. In a single paragraph at the beginning of the analysis section, the majority opinion accurately set forth the law for waiver of an interpreter. *See Garcia v. State*, No. PD–0646–13, 2014 WL 1375457, at *2 (Tex.Crim.App. Apr.9, 2014). It observed that "the right[s] at issue here" fall under the second category in *Marin v. State*, which requires that the "right must be implemented unless expressly waived." *Id.* (citing *Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App. 1993)). It noted that "when the trial judge knows that the defendant cannot understand English, an interpreter must be appointed for the defendant unless the defendant waives such appointment." *Id.* (citing *Garcia v. State*, 149 S.W.3d 135, 144–45 (Tex.Crim.App.2004)). The majority opinion concluded the paragraph by noting that a litigant "is never deemed to have [waived his rights] unless he says so plainly, freely, intelligently, sometimes in writing and *always on the record.*" *Id.* (citing *Marin*, 851 S.W.2d at 280) (emphasis original).

After the single paragraph correctly describing the applicable law, the majority opinion went astray by focusing in its remaining pages solely on the meaning of the above italicized phrase, "always on the record." *See id.* at *3–4. This Court then affirmed appellant's conviction through a single conclusory sentence that states, "The record here contains evidence that trial counsel told appellant that he had a right to an interpreter, that appellant agreed with counsel not to request an in-

trict courts disposed of 266,236 cases, and statutory county courts disposed of 494,210 criminal cases. *See* TEXAS OFFICE OF COURT

ADMINISTRATION, ANNUAL STATISTICAL REPORT FOR THE TEXAS JUDICIARY: FISCAL YEAR 2013, 40, 53 (Jan.2014).

terpreter, and that appellant and counsel communicated their desire not to have an interpreter to the trial judge, albeit in an off-the-record bench conference." *See id.* at *4. This single sentence never explains how or why this communication by appellant's counsel to the trial court, regardless of whether it was on or off the record, met the requirements in *Marin. See Marin,* 851 S.W.2d at 279. More specifically, the majority opinion never addressed the ground in appellant's petition for discretionary review that inquired,

> Did the court of appeals correctly fail to analyze the issue of whether appellant Garcia made an intelligent, knowingly [sic] and voluntary waiver of his rights to confrontations, equal protection, and due process under Amendments VI and XIV, United States Constitution, to be knowingly present with and hear in the Spanish Language from a qualified interpreter all said in the English language during proceedings in the cause's critical stages at the pretrial hearings and the jury trial?

This Court should grant rehearing to answer the question it left unanswered previously, namely, whether the communication from counsel representing to the trial court that appellant did not desire an interpreter could be characterized as an intelligent, knowing, and voluntary waiver of appellant's federal constitutional rights.

As pointed out in this motion for rehearing, the "record in this case affirmatively shows that the trial judge and the attorneys for both the State and the defense knew that Appellant could speak and understand only Spanish" and that "the trial judge did not make any inquiries beyond merely asking Appellant's counsel if appellant wanted an interpreter." Furthermore, the motion for rehearing observes that "the record is also exceedingly clear that Appellant's attorney never explained to his client that he had a personal and constitutional, state and federal, right to

have an interpreter, and to have him interpreting for him at all phases of trial, and that it really was not his lawyer's right at all." The motion explains that "it is undisputed that nobody (not the trial judge, not the prosecutors, not the interpreter, and not defense counsel) ever informed Appellant he had both federal and state constitutional rights which he would have to expressly waive." The motion concludes that the record "certainly does *not* demonstrate that such waiver was a voluntary, knowing and intelligent waiver."

The motion for rehearing accurately observes that the majority opinion wholly failed to answer the pertinent questions in this appeal with respect to whether the appellant's waiver was made knowingly and voluntarily. It states,

> These undisputed truths regarding Appellant and his ability to have any understanding of the testimony of the majority of trial witnesses leads to two questions which this Court failed to fully answer. First, whose rights were explained to Appellant? Second, what did Appellant's acquiescence to his lawyer's desires mean in the context of a waiver of personal rights? It is fundamentally clear that, when trial counsel told Appellant he could have an interpreter, but that he (defense counsel) did not want one, counsel was not explaining the defendant's right to an interpreter. It is this failure which goes unrecognized in the Court's opinion.

As I observed in my dissenting opinion in this case, because he was aware of appellant's language barrier, " 'the judge has an independent duty to ensure that the proceedings are interpreted for the defendant, absent the defendant's knowing and intelligent waiver.' " *See Garcia,* 2014 WL 1375457, at *6 (Alcala, J., dissenting) (quoting *Garcia,* 149 S.W.3d at 144). The record before us shows that the trial judge

did not make any inquiries beyond merely asking appellant's counsel if appellant wanted an interpreter. This single question and answer constituted the entirety of any discussions between the court and appellant with respect to whether appellant wanted an interpreter. At no time did the trial judge question appellant or his attorney about their reasons for declining an interpreter or about whether appellant's waiver of an interpreter was being made knowingly and voluntarily, and the trial court did not make any fact findings addressing whether appellant's waiver was made knowingly and voluntarily. The record conclusively shows that counsel did not want an interpreter for his own reasons and urged appellant to forego his right to an interpreter without fully explaining the nature of the right at stake and the possible consequences of waiving that right. The trial court then compounded the problem by failing to verify that appellant's waiver was being made freely and voluntarily, with an adequate awareness of his rights and the effect of the waiver. Because the record fails to show that appellant plainly, freely, and intelligently gave up his right to an interpreter, a reviewing court could not rationally hold that his waiver of an interpreter was made knowingly and voluntarily. Rather than address this issue head-on, the Court's majority opinion instead resolved this case by analyzing only a sub-part of appellant's arguments on a matter that had definitively already been decided by this Court, thereby leaving unanswered the larger question of whether appellant's waiver was valid. *See Davison*, 405 S.W.3d at 685–87.

The Texas criminal-justice system has recently taken two steps forward with respect to providing for language access in courts. First, according to the Office of Court Administration (OCA), the Texas Legislature has recently provided funding for a Language Access Program to "help reduce linguistic barriers to meaningful justice in Texas courts." [2] Second, as of April 2014, the "Texas Court Remote Interpreter Service (TCRIS) has now completed four months of successful operation, responding to requests from 52 judges in 39 counties for 157 hearings, for quality Spanish interpretation by licensed court interpreters." [3] Despite these two steps forward to provide language access for non-English-speaking defendants in court, this Court's majority opinion takes the Texas criminal-justice system one step back in this regard. Here, although an interpreter was actually present in the trial court ready to provide his translation services for appellant, the trial court did not use him to translate for appellant, not even to ask appellant if he knew he had a right to an interpreter, if he wanted to waive one, and if so, whether his waiver was being made intelligently, knowingly, and voluntarily. Regardless of any steps taken by the Legislature and the OCA to provide language access for defendants in court, this Court will continue to constitute the stumbling block in the path toward a better criminal-justice system in Texas until a majority of the judges on this Court consistently enforce the federal constitutional right to an interpreter.

**2.** *Texas Court Remote Interpreter Service Completes 157 Hearings*, CourTex Newsletter (Texas Office of Court Administration, Austin, T.X.), April 2014, http://archive.constant contact.com/fs126/1110322784858/archive/1117290237285. html; *see also* Texas Judicial Council, Director's Report 9–10 (Feb.2014), available at http://www.courts.state.tx.us/tjc/ meetings/022114/ DirectorsReportFeburary 2014.pdf.

**3.** *See* Office of Court Administration, *Remote Interpreter Service*, http://archive.constant contact.com/fs126/1110322784858/archive/1117290237285. html.

## II. Conclusion

By doing nothing apart from asking trial counsel if appellant wanted an interpreter, the trial court judge was either uninformed of his absolute duty to obtain an effective waiver from appellant or unwilling to do so. This problem was compounded by the conduct of trial counsel, who apparently believed himself to be so inept that he would be unable to concentrate on witness testimony merely because of the presence of an interpreter. In light of the fact that the interpreter translated the testimony of many of the Spanish-speaking witnesses into English for the jury, trial counsel's reasoning that he would be unable to concentrate if the interpreter also translated the testimony of English-speaking witnesses into Spanish for appellant lacked any logical foundation and was misguided. Based on the absence of information from the trial court judge and the misguided representations by trial counsel, appellant cannot rationally be characterized as having been adequately informed of his rights so as to have been able to make an intelligent, knowing, and voluntary waiver of his federal constitutional right to an interpreter. This is not a problem caused by a lack of funding or inadequate access to interpreters, but is instead one that implicates a judicial failure to enforce federal constitutional rights. Because this Court's majority opinion refused to even address appellant's federal constitutional complaint on the grounds that he presented in his appeal, I respectfully dissent from this Court's denial of his motion for rehearing.